WILSON TURNER KOSMO LLP
ROBERT A. SHIELDS (206042)
JASON M. AVELAR (312884)
402 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: rshields@wilsonturnerkosmo.com
E-mail: javelar@wilsonturnerkosmo.com
E-mail: warrantyeservice@wilsonturnerkosmo.com

Attorneys for Defendant
FORD MOTOR COMPANY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS PAPPAS, a Natural Person,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY; a Delaware Corporation, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:21-cv-00584-BEN-KSC<br><br>**DEFENDANT FORD MOTOR COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS**<br><br>Complaint Filed: February 24, 2021<br>Action Removed: April 2, 2021<br><br>Date: October 18, 2021<br>Time: 10:30 a.m.<br><br>District Judge: Roger T. Benitez<br><br>Magistrate Judge: Karen S. Crawford<br>Trial Date:Not Set |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 5
II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......... 6
III. ARGUMENT .......... 7
A. Legal Standard .......... 7
B. Plaintiff Is Not the Prevailing Party .......... 9
C. Plaintiff's Counsel's Billed Time Was Unreasonable and Unnecessary .......... 12
1. Plaintiff's Counsel Litigated the Matter Unnecessarily and None of the Fees Incurred After Ford's Offer Were "Reasonably Incurred" .......... 12
2. Numerous Questionable Time Entries Demonstrate Excessive Billing .......... 14
3. The Time Billed for the Present Motion Is Excessive .......... 15
4. The Time Billed for the Motion to Remand Is Excessive .......... 16
5. All Time Billed Regarding the Court's Discovery Order Should Be Stricken .......... 16
D. Plaintiff's Counsel's Hourly Rate Is Excessive .......... 17
E. Plaintiff's Request for a Lodestar Multiplier Enhancement Should Be Denied .......... 18
F. The Court Should Ensure Plaintiff's Counsel Does Not Recover Both Contingency and Statutory Fees Under Song-Beverly. .......... 19
IV. CONCLUSION .......... 21

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Abels v. JBC Legal Group, P.C.*,
233 F.R.D. 645 (N.D. Cal. 2006) ....................21

*Aispuro v. Ford Motor Co.*,
18-CV-2045-DMS-KSC, 2020 WL 4582677 (S.D. Cal. August 10, 2020) ....................9, 18, 19, 20

*Bates v. Kuguenko*,
1996 WL 654449, 100 F.3d 961 ....................20

*Campos v. Ford Motor Co.*,
17-CV-02221-AG, 2020 WL 256125 (C.D. Cal. Jan. 13, 2020) ....................10, 12

*Costa v. Comm'r of Soc. Sec. Admin*,
690 F.3d 1132 (9th Cir. 2012) ....................13

*Di Gioia v. Ford Motor Company*,
No. 18-CV-1724-JGB-KK, 2020 WL 1955311 (C.D. Cal. April 1, 2020) ....................19

*Holcomb v. BMW of North America, LLC*,
18-CV-475-JM-BGS, 2020 WL 759285 (S.D. Cal. Feb. 14, 2020)....................11

*Luna v. FCA US LLC*,
No. 17-CV-8272-ODW-RAO, 2020 WL 491462 (C.D. Cal. January 30, 2020) ....................20

*Negrete v. Ford Motor Company*,
No. 18-1972-DOC-KKx, 2019 WL 4221397 (C.D. Cal. June 5, 2019) ....................20

*Pollard v. FCA US LLC*,
17-CV-00591-JLS-JCG, 2020 WL 57270 (C.D. Cal. January 3, 2020) ......16, 17

*Reiserer v. U.S.*,
479 F.3d 1160 (9th Cir.) ....................21

*Schwarz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ....................18

*Scott v. Ford Motor Co.*,
No. 18-CV-2346-JGB-SHK (C.D. Cal. April 10, 2020) .................................... 19

*Smith v. Aetna Life Insurance Co.*,
No. 18-CV-1463-JLS-WVG, 2019 WL 1330926 (S.D. Cal. March 25, 2019) .................................... 18

*U.S. v. Blackman*,
72 F.3d 1418 (9th Cir. 1995) .................................... 21

*Venegas v. Skaggs*,
867 F.2d 527 .................................... 21, 22

**State Cases**

*Chavez v. City of Los Angeles*,
47 Cal.4th 970 (Cal. 2010) .................................... 9, 12

*Hanna v. Mercedes-Benz USA LLC*,
36 Cal.App.5th 493 .................................... 22

*Horsford v. Bd. Of Trustees of California State Univ.*,
132 Cal.App.4th 359 (Cal. Ct. App. 2005) .................................... 20, 22

*MacQuiddy v. Mercedes-Benz USA, LLC*,
233 Cal.App.4th 1036 (Cal. Ct. App. 2015) .................................... 9, 10, 11, 12

*Rappenecker v. Sea-Land Service, Inc.*,
93 Cal.App.3d 256 (Cal. Ct. App. 1979) .................................... 9

*Weeks v. Baker & McKenzie*,
63 Cal.App.4th 1128 (Cal. Ct. App. 1998) .................................... 20

**State Statutes**

Cal. Civ. Code § 1794 .................................... 9

Cal Civ. Code § 1794(d) .................................... 9

Song-Beverly Consumer Warranty Act .................................... 8, 10, 13, 20

## I. INTRODUCTION

"Plaintiff's counsel fought hard and obtained a great result for Mr. Pappas. But for plaintiff's counsel's involvement in this case, plaintiff would have never obtained the settlement reached." (Motion for Award of Fees and Costs ("Mot.), ECF No. 10-1 at 18:16-18.) "Plaintiff's counsel fought hard to obtain a great result for Mr. Zawaideh and his family. But for Plaintiff's counsel's involvement in this case, Plaintiff would have never obtained the settlement reached." (Zawaideh v. BMW of North America, LLC, No. 37-2017-00034741-CU-BC-CTL; see also the Declaration of Jason M. Avelar ("Avelar Decl.") at ¶ 13, Ex. E.)

These quoted statements are not a typographical error. Rather, they are quotes from the same motion for attorney's fees and costs that Plaintiff Nicholas Pappas' counsel has filed in the past. Indeed, much of that which has been filed in this case is mere copy-and-paste litigation – from the Complaint to the motion to remand to the present Motion for Attorney's Fees and Costs. Despite this, Plaintiff seeks an unbelievable $45,162.80 in attorneys' fees and costs for a cookie-cutter lemon law case that was settled at the Early Neutral Evaluation Conference ("ENE Conference"). No depositions were taken. No experts were involved. The Court did not enter a scheduling order regulating discovery.

Plaintiff's Motion should be denied in full or in part for several reasons. First, Plaintiff either held out of settling the matter in the hopes of higher damages, which were not achieved, or Plaintiff withheld financial information hoping for a windfall of attorney's fees and costs. Regardless, Plaintiff's counsel is entitled to either no fees or a greatly reduced amount of fees.[1] Second, Plaintiff's counsel clearly overbilled for the drafting and filing of pleadings that have been used for years. Third, the hourly rate Plaintiff's counsel seeks is heavily inflated and not supported by prevailing rates in this District. Lastly, it will be shown that a downward multiplier is warranted given

[1] Ford does not contest Plaintiff's claim of $499.00 in costs.

the simplicity of the case and given Defendant Ford Motor Company's ("Ford") early efforts to resolve the matter for a full statutory recover to Plaintiff merely days after the Complaint was filed.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff served his Complaint on Ford on March 4, 2021 alleging various issues with his 2018 Ford F-150 (the "Subject Vehicle"). (*See generally* ECF No. 1-3.) Plaintiff sought restitution, a civil penalty of two times his total damages, attorney's fees and costs, declaratory judgment, and prejudgment interest. (*Id*. at 9:6-23.) On March 31, 2021, less than one month after the Complaint was filed and before Ford filed its Answer, Ford offered a full statutory repurchase of the Subject Vehicle and to pay Plaintiff's attorney's fees and costs. (Avelar Decl. at ¶ 4.) Ford requested Plaintiff provide the information regarding his damages to allow Ford to assign a specific dollar amount to the offer. (*Id*.) Plaintiff did not provide the requested information and did not respond to Ford's offer. (*Id*.) Ford timely filed its Answer on April 1, 2021. (*See* ECF No. 1-6 at 19.) On April 2, 2021, Ford timely removed the case to this Court. (*See* ECF No. 1.)

On April 5, 2021, the Court issued a Notice and Order setting an ENE Conference for May 26, 2021. (*See* ECF No. 3.) The Notice and Order further ordered as follows:

> If a demand is made that includes attorney's fees and/or costs, counsel for the demanding party shall be able to provide, upon request, redacted billing records for opposing counsel's review, as well as an unredacted copy for the Court's *in camera* review.

(*Id*. at ¶ 6.) On May 5, 2021, counsel for Ford and Plaintiff held their conference pursuant to Federal Rule of Civil Procedure 26(f). During the conference, and as a courtesy to opposing counsel, counsel for Ford advised Plaintiff's counsel it would request Plaintiff's redacted billing statements should Plaintiff seek attorney's fees and costs at the ENE Conference pursuant to the Court's order. (Avelar Decl. at ¶ 5.)

On May 3, 2021, Plaintiff filed his motion to remand the matter to state court. (*See* ECF No. 4.) Ford timely opposed the motion to remand on May 18, 2021. (*See* ECF No. 5.) Notwithstanding that the matter had settled and Ford's request that Plaintiff simply withdraw his motion to remand, Plaintiff filed his reply to the motion to remand.[2] (*See* ECF No. 7.)

On May 26, 2021, the Court convened an ENE Conference. It was at the ENE Conference that Plaintiff revealed for the first time the value of his statutory damages, including unique incidental damages. (Avelar Decl. at ¶ 6.) Ford agreed to a statutory repurchase of the Subject Vehicle, consistent with the offer it made nearly two months earlier. (*Id.*; *see also* the Declaration of John W. Hanson ("Hanson Decl."), ECF No. 10-2 at Ex. 1.) Ford also made an offer to settle Plaintiff's attorney's fees and costs which was rejected. (Avelar Decl. at ¶ 6.)

On May 27, 2021, the Court set a continued ENE Conference solely to discuss the matter of attorney's fees and costs. (*See* ECF No. 8.) Again, the Court ordered Plaintiff to produce redacted billing records to counsel for Ford and to provide unredacted billing records to the Court on or before June 7, 2021. (*Id.*) No further ENE Conference statements were requested by the Court. (*See id.*) The Court convened the continued ENE Conference on June 14, 2021. The issue of attorney's fees and costs remained unsettled, and the Parties agreed that Plaintiff would seek a determination of appropriate fees and costs via a noticed motion. (Avelar Decl. at ¶ 7.)

Plaintiff filed the present Motion on September 17, 2021. (*See* ECF No. 10.)

## III. ARGUMENT

### A. Legal Standard

California's Song-Beverly Consumer Warranty Act (the "Song-Beverly Act") authorizes an award of "costs and expenses" to the prevailing plaintiff who brings a

---

[2] Plaintiff acknowledged the matter had settled and he was filing his reply out of "an abundance of caution." (ECF No. 7 at 1:23-25.)

claim under the Act. Cal Civ. Code § 1794(d). That a party received a "net monetary recovery in the action did not necessarily render him the prevailing party entitled to attorney fees under section 1794, subdivision (d). *MacQuiddy v. Mercedes-Benz USA, LLC*, 233 Cal.App.4th 1036, 1047 (Cal. Ct. App. 2015).

If a party is determined to be the prevailing party, awards must be "based on *actual time expended*, determined by the court to have been *reasonably incurred by the buyer* in connection with the commencement and prosecution" of the matter. *Id.* (emphasis added). Plaintiff bears the initial burden of "showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Arias v. Ford Motor Company*, No. 18-CV-1928-PSG-SPx, 2020 WL 1940843, at *2 (S.D. Cal. August 10, 2020) (quoting *Goglin v. BMW of North Am., LLC*, 4 Cal.App.5th 462 (Cal. Ct. App. 2016)). Once objections to claimed fees and costs are raised, the burden shifts to Plaintiff to show that the claimed fees are reasonable and necessary. *See Rappenecker v. Sea-Land Service, Inc.*, 93 Cal.App.3d 256, 266 (Cal. Ct. App. 1979); *see also Aispuro v. Ford Motor Co.*, 18-CV-2045-DMS-KSC, 2020 WL 4582677, *2 (S.D. Cal. August 10, 2020). Importantly, this Court has discretion to deny the Motion in its entirety or reduce unnecessary or unreasonable fees. *See Chavez v. City of Los Angeles*, 47 Cal.4th 970, 990 (Cal. 2010).

Courts calculate attorneys' fees under Cal. Civ. Code § 1794 using the lodestar adjustment method. *See Aispouro*, 2020 WL 4582677, *2 (quoting *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal.App.4th 784, 818 (Cal. Ct. App. 2016)). Courts may adjust the lodestar amount upwards or downwards based on a number of factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Id.* A fee enhancement, however, may not be appropriate, where, as here, "a statutory fee guarantee eliminates any uncertainty about whether costs will be

awarded to the prevailing party." *Arias*, at *2 (quoting *Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1175 (Cal. Ct. App. 1998)).

**B. Plaintiff Is Not the Prevailing Party**

Plaintiff flatly claims he is the prevailing party because he will receive a return of "all monies paid or payable toward the vehicle." (Mot. at 8:1-4.) Plaintiff claims that this alone renders him the prevailing party. (*Id*. at 8:4-6.) However, Plaintiff sought far more including civil penalty damages, declaratory relief, and prejudgment interest. (*See* Complaint, ECF No. 1-3 at 9:8-23.) Plaintiff achieved none of these objectives after Ford offered to repurchase the Subject Vehicle before even filing its Answer.

A party "prevails" when "it achieves its 'main litigation objective.'" *Campos v. Ford Motor Co.*, 17-CV-02221-AG (AGRx), 2020 WL 256125 at *2 (C.D. Cal. Jan. 13, 2020) (quoting *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 150-51 (Cal. Ct. App. 2006). Where a party rejects an early statutory repurchase offer and it is then later accepted, the Court should examine Plaintiff's true litigation objectives to determine whether he is the prevailing party. *Id*. Indeed, for the purposes of the Song-Beverly Act that a plaintiff "ultimately recover[s] a monetary award doesn't automatically make them the prevailing parties." *Campos*, 2020 WL 256125 at *2. It is reasonable to conclude that when a manufacturer immediately offers to repurchase a vehicle and thus restitution is not contested, a plaintiff is the prevailing party only if he succeeds in acquiring civil penalty damages. *Id*.; *see also MacQuiddy v. Mercedes-Benz USA, LLC*, 233 Cal.App.4th 1036, 1047-49 (Cal. Ct. App. 2015).

In *MacQuiddy*, defendant Mercedes-Benz immediately made an "offer to reimburse Plaintiff under the Act, in an amount equal to the actual price paid or payable by Plaintiff, including any charges for transportation and manufacturer-installed options ... and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which Plaintiff is entitled, including but not limited to, reasonable repair, towing, and

rental car costs actually incurred by Plaintiff' in its answer. *MacQuiddy*, 233 Cal.App.4th at 1040-41. Thus, the only issue to litigate "was whether Mercedes-Benz was also liable for a civil penalty." *Id*. at 1048. The plaintiff did not obtain a civil penalty. *Id*. at 1042-43. The *MacQuiddy* court determined that it was reasonable to determine that the plaintiff's main litigation objective was to obtain a civil penalty and because the plaintiff failed to achieve this objective, he was not the prevailing party. *Id*. at 1049.

This Court, using the pragmatic approach and being guided by the equitable considerations prescribed by *MacQuiddy*, should find that Ford is the prevailing party in this case. The facts here are nearly identical to the facts in *MacQuiddy*. On March 31, 2021, Ford offered a full statutory offer to repurchase the Subject Vehicle at the outset of this case. As part of this, Ford offered to refund all money paid by Plaintiff toward the Subject Vehicle, to pay all of Plaintiff's incidental and consequential damages, and to pay $8,500.00 for Plaintiff's attorney's fees and costs.[3] Plaintiff did not accept this offer. (Avelar Decl. at ¶ 4.) Therefore, it is reasonable for the Court to infer that Plaintiff's primary objective was to pursue that which was not offered – a civil penalty, declaratory relief, and prejudgment interest.[4]

After initially declining this offer, Plaintiff ultimately accepted the same statutory repurchase offer at the ENE Conference.[5] (*Id*. at ¶ 6.) The terms accepted by

---

[3] A Court may consider confidential settlement discussions when deciding attorney's fees and costs. *See Holcomb v. BMW of North America, LLC*, 18-CV-475-JM-BGS, 2020 WL 759285, at *7 (S.D. Cal. Feb. 14, 2020).

[4] This inference is further supported by the fact that at the time Ford offered to pay Plaintiff's fees and costs of $8,500.00, Plaintiff had only incurred $6,069.00 in fees and costs, representing a windfall for counsel which too was rejected.

[5] Given the confidential nature of the ENE Conference and the sensitive medical information provided by Plaintiff, Ford declines to discuss such details in its Opposition. However, should the Court have questions regarding this information provided by Plaintiff at the ENE Conference, Ford respectfully requests oral argument.

Plaintiff are clearly articulated in the settlement and release. Ford agreed that monies paid to Plaintiff represented "a repurchase of Plaintiff's vehicle …, payment of incidental damages, and out-of-pocket expense." (*See* Hanson Decl. at Ex. 1.) Ford also agreed to pay fees and costs determined by way of noticed motion while reserving the right to argue Plaintiff was not the prevailing party. (*Id.*) Critically absent from the agreement is that any monies paid by Ford were representative of a civil penalty or anything above and beyond a statutory repurchase. This is because Ford did not pay a civil penalty to settle the case.[6] Had Plaintiff prevailed and obtained the civil penalty sought, Plaintiff would have received nearly $200,000 in damages. (*See* ECF No. 1 at ¶ 15.)

Plaintiff may attempt to distinguish his case from *MacQuiddy* because here Ford did not concede liability in its Answer. However, denial of liability in an answer is inconsequential when a defendant makes it clear it wishes to pay full restitution to a plaintiff at the outset of a case. *See Campos*, 2020 WL 256125, at *2. In *Campos*, Ford made a similar early offer to repurchase the vehicle and reimburse the plaintiff's damages. *Id*. The plaintiff rejected the offer but ultimately accepted it after further litigating the matter. *Id*. The *Campos* court found that the plaintiff's primary objective was to pursue larger damages and because he did not achieve that objective the plaintiff was not the prevailing party. *Id*.

Under the circumstances here, the Court should exercise its discretion to deny fees entirely as a cautionary tale against wasting the Court's time and engaging in a pattern of asking for the sun in hopes of getting the moon – all for prosecuting a decidedly pedestrian case. "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Chavez v. City of Los Angeles*, 47 Cal.4th 970, 990 (Cal. 2010) (internal quotation omitted).

---

[6] Similarly, Plaintiff failed to secure declaratory judgment and prejudgment interest.

Since Plaintiff rejected Ford's initial offer and then ultimately accepted it after failing to pursue larger damages, Plaintiff is not the prevailing party for purposes of California's Song-Beverly Act. Accordingly, the Court should deny Plaintiff's Motion.

**C. Plaintiff's Counsel's Billed Time Was Unreasonable and Unnecessary**

If the Court determines Plaintiff was the prevailing party, Ford requests the Court reduce the amount of compensable time as unreasonable, excessive, and unnecessary. *See Costa v. Comm'r of Soc. Sec. Admin*, 690 F.3d 1132, 1135 (9th Cir. 2012) (an attorneys' fee award includes compensation for all hours reasonably expended in the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded).

**1. Plaintiff's Counsel Litigated the Matter Unnecessarily and None of the Fees Incurred After Ford's Offer Were "Reasonably Incurred"**

Here, the Court should exercise its discretion and strike all of the hours billed after Ford's March 31, 2021 offer to settle the matter for a statutory repurchase. This is because the matter ultimately settled for the same statutory repurchase and the delay was solely because of Plaintiff's refusal to provide the most basic financial information. All litigation after Ford's March 31, 2021 offer was wholly unnecessary.

On March 31, 2021, Ford offered a statutory repurchase of the Subject Vehicle pursuant to California's Song-Beverly Act and $8,500.00 in attorney's fees and costs.[7] Ford offered to refund (1) the purchase price of the Subject Vehicle, (2) charges for transportation and manufacturer-installed options, (3) finance charges paid by Plaintiff, (4) all official fees and taxes paid, and (5) all incidental and consequential

---

[7] Plaintiff's attorney's fees and costs at this point, assuming and accepting Plaintiff's demand of $510 per hour, were $6,069.00.

damages incurred by Plaintiff. Plaintiff did not accept this offer. However, at the ENE Conference, the matter settled for a statutory repurchase, payment of incidental, and out-of-pocket expenses – precisely what Ford offered to pay nearly two months earlier. (*See* Hanson Decl. at Ex. 1.)

Plaintiff complains throughout his Motion that Ford has access to "all key evidence" in the case, including "warranty repair records, and those of its franchise dealerships, and its employee and agent witnesses[.]" (Mot. at 9:18-20, 16:9-12.) Yet the most important information when it comes to the resolution of lemon law matters is that which Ford has no access and which plaintiffs and their counsel hold onto most dearly – financial information as it relates to damages.

Critically, in lemon law cases Ford has no information regarding how much a consumer spends on a vehicle, how much a consumer has spent on various fees such as registration, or what incidental damages a consumer has incurred. (*See* Avelar Decl. at ¶ 8.) Even assuming, *arguendo*, Ford has access to the purchase contract for a vehicle before discovery commences, Ford does not know much money a consumer has *actually* paid towards a vehicle. (*Id.*) For example, if the purchase contract shows a consumer has a minimum monthly payment of $300 but that consumer chose to pay $900 per month to pay off the vehicle sooner, Ford would have no knowledge of this fact and could not make a repurchase offer that includes accurate financial information. Or, as was the case here, when a plaintiff has exceptional incidental damages, Ford has *no way* of knowing this information. Given this, the best Ford can do to resolve a case early is to offer a statutory repurchase and rely on opposing counsel to inform Ford of the financial details. Therefore, Plaintiff's counsel's claim that Ford's offer was insufficient because "[n]o dollar amounts were named" is *solely due to the fact that Plaintiff withheld that information*. (Hanson Decl. at ¶ 7.) Counsel that practice in the area of lemon law often seize on this advantage and hold this relevant information hostage as long as possible in order to generate a larger fee bill. (Avelar Decl. at ¶ 8.) Here, Plaintiff withheld all financial information, and it was not

until the ENE Conference where Plaintiff divulged his damages. Unsurprisingly, the matter promptly settled.

Given Plaintiff's counsel's refusal to provide the most basic information until he was required to at the ENE Conference and the clear intent to stretch out the litigation unnecessarily, the Court should strike any billed time after Ford's March 31, 2021 offer. Plaintiff was no better off by needlessly litigating the case beyond this date. For these reasons, the Court should strike all time entries after March 31, 2021 and award Plaintiff no more than $6,069.00 in attorneys' fees, if it does not deny the Motion altogether.[8]

**2. Numerous Questionable Time Entries Demonstrate Excessive Billing**

Plaintiff's counsel's billing records are rife with dubious and excessive billing entries for work on pleadings that are virtually identical to those filed by opposing counsel in the past. Additionally, Plaintiff's counsel billed for correspondence that was never sent, his personal dispute with the Court's order, and numerous other activities that in no way advanced Plaintiff's cases. The Court should strike each of these entries.[9]

Plaintiff's counsel claims it took him nearly three hours to draft the Complaint. (*See* Hanson Decl. at Ex. 5 (entries on Feb. 11 and Feb. 24 of 2021).) Yet Plaintiff's counsel has filed the exact same form-complaint for years.[10] (*See* Avelar Decl. at ¶¶

---

[8] This figure is based on the hourly rates discussed below. Additionally, this figure does not take into consideration the numerous reductions the Court should take for the reasons that follow.

[9] While some of these entries may appear insignificant, they are illustrative of the pattern and practice of excessive billing. Moreover, these entries in the aggregate are what cause fee bills of over $40,000 for a case that resolved very early.

[10] It should be noted that Ford does not object to the use of form pleadings. However, Plaintiff's counsel should not be compensated each time a pleading is filed as if the pleading were drafted from scratch.

10-12; *see also Ose v. Ford Motor Co.*, 20-CV-2093-BEN-AGS, ECF No. 1-2.) But for the different caption, the only difference in the complaint filed by Plaintiff's counsel in this case and others is the vehicle's make, model, and VIN. It is patently unreasonable to claim such a task took more than fifteen minutes, let alone nearly three hours. This clearly exemplifies excessive billing, and this time should be struck entirely or reduced to a .3.

Plaintiff's counsel also billed 1.7 hours on April 5, 2021 for review of the scheduling order and the drafting of a "LL buyback offer." (*See* Hanson Decl. at Ex. 5.) No scheduling order issued in this case and, to the extent "LL" means lemon law, no lemon law buyback offer was ever sent to Ford. (Avelar Decl. at 9.) Accordingly, this time should be struck in its entirety.

**3. The Time Billed for the Present Motion Is Excessive**

Plaintiff's counsel claims to have spent 13.2 hours researching and drafting the present Motion, drafting counsel's declaration, working with other consumer attorneys regarding their declarations, plus an additional six hours of estimated time to review Ford's opposition and the preparation of a reply. (*See* Hanson Decl. ¶ 36.H; Ex. 1.) Where a motion for fees in costs "substantially resembles" or is "at times identical to" another fee motion filed by the same attorney, the Court is within its discretion to strike that time. *See Pollard v. FCA US LLC*, 17-CV-00591-JLS-JCG, 2020 WL 57270, at *5 (C.D. Cal. January 3, 2020). Here, the present Motion is virtually identical to a motion Plaintiff's counsel filed over *two years ago*. (*See Zawaideh v. BMW of North America, LLC*, No. 37-2017-00034741-CU-BC-CTL; *see also* Avelar Decl. at ¶ 13.) The Table of Authorities in the present Motion is telling when compared to a previously filed motion for attorney's fees and costs. The cases cited in both matters are identical. Every page on which those cases appear is identical. Indeed, Plaintiff's counsel even left argument supporting the rates of Ms. Swanson, an apparent associate that had nothing to do with this case, in the pending Motion. (*See*

Mot. at 11:28-12:5.) All of this strongly suggests that no further research was done in this case and that Plaintiff's counsel merely recycled a previously drafted motion.

The declarations supporting the Motion are no different. The Declaration of Gregory T. Babbitt is *identical* to his declaration filed in 2019. (*See* Avelar Decl. at ¶ 14.) The Declarations of John Hendrickson and Martin W. Anderson are also substantially similar to those that were filed over two years ago. (*Id*. at ¶¶ 15-16.) It is abundantly clear that none of the declarations provided in this case, but for the declaration of Plaintiff himself, were drafted for this litigation.

Since the pending Motion and the supporting declarations substantially resemble, and much of the time are identical, to previously filed fee motions, the Court should strike the 19.2 hours of excessively billed time. *See Pollard*, 2020 WL 57270, at *5.

**4. The Time Billed for the Motion to Remand Is Excessive**

For the same reasons for striking the time regarding the present Motion, the Court should also strike the 7 hours Plaintiff's counsel is claiming for time related to Plaintiff's motion to remand the matter to state court. Plaintiff's counsel claims that "[m]otions to remand are difficult and require significant research and briefing." (Hanson Decl. at ¶ 36.D; Ex. 5.) Yet Plaintiff's counsel filed what was merely a slightly modified version of a motion to remand that has been filed in this District on numerous occasions and at a minimum twice before this Court. (*See Canseco v. Ford Motor Co.*, 21-CV-425-BEN-RBB, ECF No. 6-1; *Potts v. Ford Motor Co.*, 21-CV-256-BEN-BGS, ECF No. 11-1).

**5. All Time Billed Regarding the Court's Discovery Order Should Be Stricken**

Plaintiff's counsel purportedly spent 10.3 hours of time researching what was nothing more than a fabricated issue with the Court's order. (*See* Hanson Decl. at ¶ 36.C.; Ex. 5.) Plaintiff clearly has no problem disclosing his billing records. He has done so here for the present Motion and has done so in the past. (*See* Avelar Decl. at ¶

13.) As Plaintiff stated, "[t]he proper question is whether the fee time was reasonably calculated to advance and protect the client's interests in pursuit of the ultimate result achieved." (Mot. at 14:15-20 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983).) In no way can Plaintiff's counsel claim that quarreling with the Court over the production of billing records that were at issue based solely on Plaintiff's demand advanced and protected the client's interest. Rather, this fabricated issue merely drove up attorney's fees and nothing more. Given this, the Court should strike these 10.3 hours as unreasonable and excessive.

### D. Plaintiff's Counsel's Hourly Rate Is Excessive

"A reasonable hourly rate is the rate prevailing in the community for similar work." *Aispuro*, 2020 WL 4582677, at *3 (citing *Gonzales v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) To determine what is reasonable, courts look to the prevailing market rates in the community served. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). "If the party seeking attorneys' fees fails to meet its burden, the court may exercise discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Arias v. Ford Motor Co.*, No. EDCV 18-1928 PSG (SPx), 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020).

Plaintiff supports his request to recovery at an hourly rate of $510 with recycled declarations of other lemon law counsel. These same declarations have been filed for years. (*See* Avelar Decl. at ¶¶ 14-16.) As President John F. Kennedy once said, a rising tide lifts all boats.[11] It only benefits counsel that regularly engage in lemon law matters to seek hyperinflated rates and lodge declarations regarding the same. Such self-serving declarations should be viewed with skepticism. *See Smith v. Aetna Life*

[11] See *Remarks in Heber Springs, Arkansas, at the Declaration of Greers Ferry Dam*, The American Presidency Project, https://www.presidency.ucsb.edu/documents/remarks-heber-springs-arkansas-the-dedication-greers-ferry-dam

*Insurance Co.*, No. 18-CV-1463-JLS-WVG, 2019 WL 1330926, *2 (S.D. Cal. March 25, 2019). Courts often set aside these self-serving declarations, using more objective guidelines to determine reasonable hourly rates. *See*, *e.g.*, *Aispuro*, 2020 WL 4582677, *3-4; *Arias*, 2020 WL 1940843, at *8, *Di Gioia v. Ford Motor Company*, No. 18-CV-1724-JGB-KK, 2020 WL 1955311, at *3 (C.D. Cal. April 1, 2020) (setting partner hourly rate at $350 and associate hourly rate at $225); *Scott v. Ford Motor Co.*, No. 18-CV-2346-JGB-SHK, at *4-5 (C.D. Cal. April 10, 2020) (setting partner hourly rate at $325 and associate hourly rate at $225).

The rates requested by Plaintiff outpace the prevailing rates for similar work. Chief Judge Dana M. Sabraw found the 2020 prevailing rate, the year before this matter was litigated, in lemon law matters for partners with nearly the exact same time practicing in the same field to be $350 per hour (reduced from $650 per hour) in basic lemon law matters, relying on the *2018 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* as a guidepost. *See Aispuro*, 2020 WL 4582677, at *3-4. In doing so, the Court found the "Real Report [to be] a much better reflection of true market rates than self-reported rates." *Id*. (quoting *Hicks v. Toys 'R' Us-Delaware, Inc.*, No. CV 13-1302-DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014)).

Plaintiff claims that his counsel's hourly rate has been approved "in this court" in the past. (Mot. at 11:4-5.) Yet Plaintiff provides no citations to such an approval in this Court. Rather, Plaintiff string cites to unavailable cases or case names with no citation whatsoever. (*Id*. at 11:5-12.)

Given the simplicity of the matter, the evidence demonstrating that Plaintiff's counsel merely recycled nearly every pleading, and the authority cited above, the lodestar hourly rates for Plaintiff's counsel should be adjusted to $350 per hour.

### E. Plaintiff's Request for a Lodestar Multiplier Enhancement Should Be Denied

Plaintiff's request for a lodestar multiplier should be denied. There is no

evidence before the Court that indicates the issues presented in this litigation were novel or complex. Nor is there any evidence that Plaintiff's counsel displayed any exceptional skill in litigating the matter. And, given Song-Beverly Act's statutory fee provisions, there is little to no contingent risk. In similar straightforward lemon law cases, district courts throughout California have declined to award a lodestar multiplier. *See*, *e.g.*, *Negrete v. Ford Motor Company*, No. 18-1972-DOC-KKx, 2019 WL 4221397, at *4 (C.D. Cal. June 5, 2019) (applying a downward lodestar multiplier because the case did not involve issues that were "particularly novel or complex"); *Arias*, at *7-8 (declining to award lodestar multiplier because case was not complex); *Luna v. FCA US LLC*, No. 17-CV-8272-ODW-RAO, 2020 WL 491462, at *5 (C.D. Cal. January 30, 2020) (holding the same).

Moreover, the Song-Beverly Act contains a provision to recovery attorneys' fees, reducing the chances that Plaintiff's counsel would not recover for their work. Thus, here, as in virtually every other Song-Beverly Act case, there is no basis for an upward multiplier because "the availability of statutory fees [makes] the possibility of receiving full compensation for litigating the case … greater than that inherent in most contingency fee actions." *Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1174 (Cal. Ct. App. 1998); *see also Aispuro*, 2020 WL 4582677, at *6; *Luna*, 2020 WL 491462, at *5 (finding the statutory authorization of fees in Song-Beverly cases does not weigh in favor of an upward departure).

Since none of the relevant factors favor a lodestar enhancement, the Court should deny Plaintiff's request.

**F. The Court Should Ensure Plaintiff's Counsel Does Not Recover Both Contingency and Statutory Fees Under Song-Beverly.**

Counsel must reimburse Plaintiff from the statutory award for any amounts paid by the client pursuant to the contingency contract. *Horsford v. Bd. Of Trustees of California State Univ.*, 132 Cal.App.4th 359, 401 (Cal. Ct. App. 2005). This is in accord with federal law on the subject. *See Bates v. Kuguenko*, 1996 WL 654449, at

*1 (nonpub.opn), 100 F.3d 961 (table) ("a statutory fee award must ordinarily be subtracted from the amount owed under a contingency arrangement in order to prevent 'windfall recoveries' by the attorneys of civil rights plaintiffs"); *Venegas v. Skaggs*, 867 F.2d 527, 534 n.7 ("The plaintiff's attorneys are not entitled to both the statutory award and the full amount of the contingency fee").

As the contingency fee has been put into issue by virtue of this instant Motion, the contingency fee contract is not privileged for purposes of this determination. *See Reiserer v. U.S.*, 479 F.3d 1160, 1165 (9th Cir.) ("'[T]he attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client'"); *U.S. v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege"); *Abels v. JBC Legal Group, P.C.*, 233 F.R.D. 645, 647 n. 1 (N.D. Cal. 2006) (noting court's previous determination "that under Ninth Circuit law, 'fee agreements generally fall outside the scope of attorney client privilege'").)) An attorney having an agreement permitting the recovery of both a statutory fee award and contingency fees must present that fee agreement to the Court for a determination that the total recovery will be reasonable. (*In re Matter of Yagman* (Review Dept. 1997) 3 Cal. State Bar Ct. 788, 799.) Though Plaintiff's counsel has admitted he accepted the case on a contingency basis, he failed to either (1) attach the fee agreement to the motion so the Court can determine the attorneys' total anticipated payment of fees from this case, or (2) otherwise affirm that the agreement provides the required offset of statutory fees against contractual contingency fees.

The Court should order Plaintiff's counsel to produce the contingency fee contract to permit its proper examination. If the Court does not require Plaintiff to disclose the terms of his retainer agreement, the Court should direct Plaintiff's counsel to refund to Plaintiff any contingency fee payments received that are less than the amount of the statutory award, not to seek payment of contingency fees to the extent

not already collected, and to demonstrate that the ruling was communicated to Plaintiff. *See Hanna v. Mercedes-Benz USA LLC*, 36 Cal.App.5th 493, 504 n.7 (trial court ordered counsel "not to make any [contingency fee] deduction from the plaintiff's recovery to doubly compensate" self in light of statutory fees award under Song-Beverly statute.) Such an order would not require any disclosure of the fee agreement by Plaintiff's counsel but would nonetheless ensure counsel's compliance with the professional responsibility requirements set forth in *Horsford* and *Venegas*.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion because Plaintiff is not the prevailing party in the matter. In the alternative, the Court should greatly reduce the fees and costs awarded to Plaintiff's counsel for this simple lemon law matter.

Dated: October 4. 2021 **WILSON TURNER KOSMO LLP**

By: *s/Jason M. Avelar*
ROBERT A. SHIELDS
JASON M. AVELAR
Attorneys for Defendant
FORD MOTOR COMPANY